TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

ROB BONTA
Attorney General

_____

| | : | |
|---|---|---|
| OPINION | : | |
| | : | No. 24-404 |
| of | : | |
| | : | April 2, 2025 |
| ROB BONTA | : | |
| Attorney General | : | |
| | : | |
| SUSAN DUNCAN LEE | : | |
| Deputy Attorney General | : | |

The HONORABLE MICHAEL SWEET, CHAIR OF THE CALIFORNIA CITIZENS COMPENSATION COMMISSION, has requested an opinion on a question relating to the scope of the Commission's authority.

**QUESTION PRESENTED AND CONCLUSION**

Does the California Citizens Compensation Commission have the authority to adjust the compensation of the members of the State Board of Equalization to reflect a substantial reduction in their duties, powers, and responsibilities due to the passage of Assembly Bill 102 (The Taxpayer Transparency and Fairness Act of 2017)?

Yes, the Commission has authority to adjust the compensation of members of the State Board of Equalization to reflect a substantial legislative reduction in their functions and duties due to the passage of Assembly Bill 102.

24-404

**BACKGROUND**

**California Citizens Compensation Commission**

The California Citizens Compensation Commission exists to set compensation for elected state officers.[1]  Until 1990, the responsibility for determining elected state officials' compensation rested in the Legislature.  In 1990, California voters reassigned that responsibility to a citizen-led commission by approving Proposition 112, which added Article III, section 8 to the California Constitution.  The measure created a seven-member commission, composed entirely of private citizens appointed by the Governor, to establish and then annually adjust the salary and benefits of elected state officers, including members of the State Board of Equalization.[2]

Whether the Commission is establishing or adjusting compensation, the factors it must consider are the same: the time commitment required to perform the official responsibilities; the level of compensation provided to officials with similar responsibilities; and the "responsibility and scope of authority of the entity in which the state officer serves."[3]

---

[1] Cal. Const., art. III, § 8, subds. (a)-(e) (establishing structure and criteria). "Compensation" in this context means "the annual salary and the medical, dental, insurance, and other similar benefits of state officers."  (*Ibid.*)

[2] See Cal. Const., art. III, § 8, subd. (g) ("On or before December 3, 1990, the commission shall . . . establish the annual salary and the medical, dental, insurance, and other similar benefits of state officers. . . .  Thereafter, at or before the end of each fiscal year, the commission shall . . .  adjust the medical, dental, insurance, and other similar benefits of state officers" and "the annual salary of state officers"); *id.*, subd. (*l*) ("'State officer' . . . means the Governor, Lieutenant Governor, Attorney General, Controller, Insurance Commissioner, Secretary of State, Superintendent of Public Instruction, Treasurer, member of the State Board of Equalization, and Member of the Legislature").

[3] Cal. Const., art. III, § 8, subd. (h).  Subdivision (h) states:  "In establishing or adjusting the annual salary and the medical, dental, insurance, and other similar benefits, the commission shall consider all of the following":

> (1) The amount of time directly or indirectly related to the performance of the duties, functions, and services of a state officer.

> (2) The amount of the annual salary and the medical, dental, insurance, and other similar benefits for other elected and appointed officers and officials in this State with comparable responsibilities, the judiciary, and, to the extent practicable, the private sector, recognizing, however, that state officers do not receive, and do not expect to receive, compensation at the

(continued…)

2

24-404

The Commission's constitutional duty to establish and then annually adjust compensation levels was explained to voters in the official ballot pamphlet, as follows: "The commission would have until December 3, 1990, to set the salaries and benefits which would be effective for one year beginning on that date. In the following years, the commission could adjust annually the salaries and benefits of elected state officers."[4]

In 1990, the Commission conducted proceedings and officially established base pay and benefits for all elected state officers except members of the Legislature. In 1994, the Commission established base pay and benefits for legislators.[5] Since then, the Commission has adjusted compensation rates annually.[6]

## Board of Equalization

The Board of Equalization was established in 1879 by Article XII, section 17 of the California Constitution to regulate county property-tax-assessment practices, equalize county-assessment ratios, and assess properties of intercounty railroads.[7] Over time, the Legislature assigned additional duties to the Board, including administration of state sales and use taxes and dozens of other business taxes and fees.[8] Adding to the complexity of

same levels as individuals in the private sector with comparable experience and responsibilities.

(3) The responsibility and scope of authority of the entity in which the state officer serves.

(4) Whether the Director of Finance estimates that there will be a negative balance in the Special Fund for Economic Uncertainties in an amount equal to or greater than 1 percent of estimated General Fund revenues in the current fiscal year.

[4] Ballot Pamp., Primary Elec. (June 5, 1990) Analysis by the Legislative Analyst, p. 23, https://repository.uclawsf.edu/ca_ballot_props/1059 (as of Apr. 1, 2025).

[5] See Cal. Citizens Compensation Commission, Salaries, https://www.calhr.ca.gov/cccc/Pages/cccc-salaries.aspx (as of Apr. 1, 2025).

[6] See Cal. Citizens Compensation Commission, Commission History, https://www.calhr.ca.gov/cccc/Pages/cccc-commission-history.aspx (summary of Commission's actions) ("Compensation Commission History") (as of Apr. 1, 2025).

[7] See Cal. State Board of Equalization, About BOE, https://www.boe.ca.gov/info/about.htm (as of Apr. 1, 2025); see *Hanks v. State Bd. of Equalization* (1964) 229 Cal.App.2d 427 (Board created by 1879 Constitution, which was adopted by constitutional convention and ratified by voters).

[8] See former Rev. & Tax Code, § 20 (repealed by Stats. 2017, ch. 16, § 14) (defining "Board" as Board of Equalization); e.g., Rev. & Tax Code, § 7051 (sales and use taxes);

(continued…)

24-404

its portfolio, the Board also served as an administrative appeals body, hearing taxpayer challenges to certain tax and fee assessments.[9]  This combination of responsibilities led to longstanding concerns that the Board's structure combined incompatible legislative, executive, and judicial features.[10]  On top of those concerns, various state audits and investigations in the years leading up to 2017 disclosed a variety of systemic problems, which the Board was unable to fully remediate.[11]

In 2017, the totality of these circumstances led to the adoption of Assembly Bill 102, The Taxpayer Transparency and Fairness Act, which created the new Department of Tax and Fee Administration and transferred the bulk of the Board's duties to the new agency, along with the Board's civil service employees, its properties, and its funding.[12]  The Act also created the new Office of Tax Appeals and transferred to it the Board's duties relating to tax appeal hearings.[13]  As a result of this restructuring, the Board is left with only the three programs assigned to it by the Constitution:  overseeing California's

*id.*, § 8251 (motor vehicle fuel tax); *id.*, § 30451 (cigarette tax); see also, e.g., 78 Ops.Cal.Atty.Gen. 26 (1995); 85 Ops.Cal.Atty.Gen. 141 (2002).

[9] See former Cal. Code Regs., tit. 18, §§ 5260-5268, 5270-5271, 5510-5576.

[10] See Legislative Analyst's Office, The 2018-19 Budget: California's New Tax Departments, p. 3, available at https://www.lao.ca.gov/reports/2018/3796/new-tax-departments-040418.pdf (as of Apr. 1, 2025).

[11] See *ibid.*  For example, between 1992 and 1998, the Legislature added 250 audit positions to the Board, only for a 1999 State Auditor's report to find that members had redirected more than half of the new positions to work as support staff for members' activities.  (See Department of Finance–Office of State Audits and Evaluations, California State Board of Equalization: Sales and Use Tax Reporting [and] Retail Sales Tax Adjustment (March 2017) p. 1, available at https://oreports.dof.ca.gov/reportPdf/370/Board%20of%20Equalization%20Evaluation%20March%202017 (as of Apr. 1, 2025).)  The Auditor found that the Board's response to audit recommendations was unconstructive.  Noting that the Board's "operational culture" hampered its ability to report reliable information to decisionmakers, the State Auditor reported that people responsible for the Board's operations "were unable to provide complete and accurate documentation or answer basic questions regarding operations related to our evaluation objectives.  Additionally, various levels of management were not aware of and could not speak to certain activities conducted within the districts for which they held oversight responsibilities.  Several individuals stated that board members, acting individually, intervene in the daily operations within their respective districts.  These individuals also reported a fear of retaliation if staff did not respond or follow the directions of the individual board members."  (*Id.* at p. 10.)

[12] Stats. 2017, ch. 16 (AB 102) (adding Gov. Code, §§ 15570-15570.100).

[13] Gov. Code, §§ 15670-15680.

4

property tax system, and administering the Alcoholic Beverage Tax Program and the Tax on Insurers.[14]

There are five voting members of the Board, comprising the State Controller (ex officio) and four members elected to four-year terms (one for each equalization district).[15] The structural changes wrought by AB 102 to the duties of the Board of Equalization prompted the Compensation Commission to consider whether it has authority to call for a commensurate reduction in the Board members' compensation.

## ANALYSIS

The question here is whether the Commission has authority to adjust Board members' base pay to reflect the significant reduction of the Board's responsibilities. We conclude that the Commission does have this authority.

Our analysis rests on our interpretation of the constitutional provisions creating the Commission and guiding its operations.[16] As set out above, Article III, section 8 instructs the Commission first to "establish," and thereafter annually to "adjust," the salary and benefits to be paid to elected state officials. The first phase of establishing compensation levels was completed by 1994 and the Commission has been annually adjusting those levels ever since.[17] Some years compensation has gone up, some years it has gone down,

---

[14] Gov. Code, § 15600; see Cal. State Board of Equalization, About BOE, https://www.boe.ca.gov/info/about.htm (as of Apr. 1, 2025).

[15] Cal. Const., art. XIII, § 17. The office of State Controller is one of the offices for which the Commission has established compensation, and now adjusts compensation annually. (Cal. Const., art. XIII, § 8, subd. (*l).*) The State Controller's duties as an ex officio member of the Board can figure into the Commission's evaluations of the Controller's compensation, but the Controller's compensation is to be adjusted individually on its own merits, while the elected Board members' compensation is to be evaluated and adjusted based on the Board's particular duties and responsibilities. (See Cal. Const., art. XIII, § 17 [Controller is Board member ex officio]; Cal. Const., art. III, § 8, subds. (h) [compensation factors], (*l*) [listing both Controller and Board member as subject officers].)

[16] *Methodist Hosp. of Sacramento v. Saylor* (1971) 5 Cal.3d 685, 691 ("In construing the meaning and intent of the constitutional language, we are guided by established principles of construction and other extrinsic aids to constitutional interpretation").

[17] See Cal. Citizens Compensation Commission, Commission History, https://www.calhr.ca.gov/cccc/Pages/cccc-commission-history.aspx (summary of Commission's actions) (as of Apr. 1, 2025).

24-404

and occasionally it has remained level year to year.[18]  Most of the time, compensation has been adjusted at the same rate across the board for all elected officials, but sometimes one or more offices are treated differently from the rest.[19]

As the Commission's actions show, there is no dispute that the Commission may adjust compensation down as well as up.  As discussed in more detail below, the word "adjust" means to conform or adapt to the circumstances.  Nothing in the text of Article III, section 8 expressly limits the Commission to upward adjustments if the circumstances suggest otherwise.[20]  And even if the text's silence were perceived to create an ambiguity, the ambiguity would be resolved by reference to the original ballot pamphlet statements, which informed the 1990 voting public in so many words that, "The Commission is NOT a guaranteed pay raise.  The opponents didn't tell you that the Commission has the power to *lower* salaries."[21]

The crux of the question here is not *whether* the Commission has authority to reduce Board members' compensation, but by *how much.*  As explained by the Commission, it "understands that it may reduce salary as part of its annual process to 'adjust' the salary of elected officials.  The focus of this inquiry is specifically whether—included within that power—the Commission may re-'establish' afresh the salary of elected officials whose powers, duties and responsibilities have changed . . . ."[22]  We conclude that the Commission has the power to take a fresh look at the Board members' work and to reduce their compensation if appropriate.  In doing so, however, we see no need to call or conceive of a significant salary reduction as a "re-establishment" of the Board compensation level.  As we see it, the establishment phase has already happened; it

---

[18] See Cal. Citizens Compensation Commission, Recent Action, https://www.calhr.ca.gov/cccc/Pages/cccc-recent-action.aspx (as of Apr. 1, 2025).

[19] For example, in 2006, salaries were increased 18 percent for constitutional officers and 2 percent for legislators; in 2007 salaries were increased 5 percent for the Attorney General and Superintendent of Public Instruction and 2.75 percent for legislators.  (See Cal. Citizens Compensation Commission, Commission History, https://www.calhr.ca.gov/cccc/Pages/cccc-commission-history.aspx (summary of Commission's actions) (as of Apr. 1, 2025).)

[20] Cal. Const., art. III, § 8, subd. (g).

[21] Ballot Pamp., Primary Elec. (June 5, 1990) Rebuttal to Arguments Against Prop. 112, p. 25, https://repository.uclawsf.edu/ca_ballot_props/1059 (as of Apr. 1, 2025); see *People v. Rizo* (2000) 22 Cal.4th 681, 685 ("When the language is ambiguous, we refer to other indicia of the voters' intent, particularly the analyses and arguments contained in the official ballot pamphlet" (internal quotation marks and citations omitted)).

[22] California Citizens Compensation Commission, letter to Senior Assistant Attorney General Marc J. Nolan, Apr. 16, 2024 (on file).

24-404

is complete. According to the plain text of the constitutional provision, any decisions the Commission makes now are "adjustments," no matter the degree of the change.[23]

When interpreting legal text, words that are not defined by the text itself should be given their ordinary, everyday meanings.[24] The word "adjust" means "to bring to a more satisfactory state," or "to make correspondent or conformable," or "to bring the parts of to a true or more effective relative position."[25] These definitions convey the sense of a situation being changed in order to bring it into harmony with pertinent circumstances. That sense is fully apt here, where the Commission is charged with overseeing compensation packages for state elected officers for the very purpose of ensuring that they remain anchored in current fact and law. Nothing in the text of the Constitution limits the Commission to making adjustments that are small, or based on the cost of living, or in synch with the adjustments made to other officers' compensation.[26]

To the contrary, the Commission is required to adjust each elected official's compensation to conform to their current responsibilities by applying the very same criteria used for establishing compensation in the first place.[27] The Constitution requires the Commission to consider four factors when it establishes *or* adjusts compensation: (1) the amount of time required to do the job; (2) the amount of compensation provided to other officials with comparable responsibilities; (3) the responsibility and scope of authority of the entity in which the state officer serves; and (4) whether the State budget permits a raise.[28] Here, the first and third factors—the time required to do the job and the scope of authority of the office in question—have been radically changed by Assembly Bill 102. We believe the Commission would be justified in applying those factors to

---

[23] Cal. Const., art. III, § 8, subd. (h).

[24] *Methodist Hosp. of Sacramento v. Saylor*, *supra*, 5 Cal.3d at p. 691 ("In construing the meaning and intent of the constitutional language, we are guided by established principles of construction and other extrinsic aids to constitutional interpretation"); see *People v. Killian* (2024) 100 Cal.App.5th 191, 205, 212.

[25] Merriam-Webster Dictionary Online, https://www.merriam-webster.com/dictionary/adjust. Black's Law Dictionary (12th ed. 2024) defines "adjust" as "to determine the amount that an insurer will pay an insured to cover a loss" or 'to arrive at a new agreement with a creditor for the payment of a debt." Neither of those definitions is apt here.

[26] See, e.g., *Komendat v. Gifford*, 2024 WL 4847835, at *7 (Mich. Ct. App. 2024) (discussing dictionary definitions of "adjust" and rejecting argument that only "small" adjustments are possible).

[27] *Ibid.*

[28] Cal. Const., art. III, § 8, subd. (h).

7

adjust the compensation of Board members as appropriate to reflect their current functions and responsibilities.

The powers and duties of the Board of Equalization have been reduced to the bare constitutional minimum, and the bulk of its prior powers have been reassigned to sizeable new agencies. We conclude that the Commission has authority to adjust Board members' compensation consistent with Section 8(h) of article III of the California Constitution.

24-404